**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 28 2012, 11:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TOBY D. SHAW, II**
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**ALLYSON R. BREEDEN**
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF H.V. and D.M., Jr., | ) | |
| | ) | |
| M.P., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1204-AD-316 |
| | ) | |
| J.H. and D.H., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Renee A. Ferguson, Magistrate
Cause Nos. 82D07-1105-AD-86, 82D07-1105-AD-87,
82D07-0707-GU-104, 82D07-0509-GU-166

**December 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

M.P. is the mother of two minor children, H.V. and D.M., Jr. The children were removed from Mother's care on May 10, 2007, after the Department of Child Services received allegations that Mother was abusing drugs and neglecting the children. Mother's aunt, J.H., subsequently became the children's guardian and has remained in that role since August 22, 2007. Mother's last meaningful communication and visit with the children occurred in October of 2008.

On April 18, 2011, Mother filed petitions seeking to terminate J.H.'s guardianship of the children. Shortly thereafter, on May 27, 2011, J.H. and her husband, D.H., filed petitions seeking to adopt the children. In their petitions, J.H. and D.H. alleged that the adoption would be in the children's best interests and that Mother's consent was not necessary pursuant to Indiana Code section 31-19-9-8(a)(2) because Mother had failed to engage in significant communication with and provide support for the children. Following a two-day trial, the trial court denied Mother's petitions, determined that Mother's consent to the adoption was not necessary because J.H. and D.H. had proved that the conditions dispensing with the consent requirement had been met, and granted J.H. and D.H.'s petitions to adopt the children. Concluding that Mother's consent to the adoption of the children was not necessary, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mother has two minor children at issue in this appeal, H.V. and D.M., Jr. (collectively, "the children"). H.V. was born on December 9, 2002. D.M., Jr. was born on November 26, 2006. The children were removed from Mother's care on May 10, 2007, due to drug abuse

and neglect by Mother.[1]  On May 14, 2007, DCS filed petitions alleging that the children were children in need of services ("CHINS").  In these petitions, DCS alleged that the children were living in an environment that endangered their health, safety, and well-being.[2]  On July 10, 2007, the children were placed in the care of their maternal great aunt, J.H.  J.H. subsequently became the children's legal guardian and has remained in that role since August 22, 2007.

After the children were removed from Mother's care, Mother entered a drug rehabilitation program.  Upon entering the rehabilitation program, Mother tested positive for a variety of drugs.  At the advice of DCS Family Case Manager Trish Brown, J.H. created a list of goals that she believed Mother should meet before J.H. would support an attempt to terminate her guardianship over the children.  These goals included obtaining and maintaining stable housing and employment, participating in anger management classes, remaining drug and alcohol free, attending a long-term substance abuse program, financially supporting the children when she obtained employment, and getting her driver's license back.

During the course of the guardianship, Mother was free to visit with the children whenever she chose so long as she passed a drug screen before the visit commenced.  Mother tested negative for drugs and visited with the children three times during September, October, and November of 2007.  However, in late November of 2007, Mother tested positive for

---

[1]  H.V. was previously removed from Mother's care in August of 2005 after DCS determined that Mother was abusing drugs and that H.V. was living in an environment that endangered her health, safety, and well-being.

[2]  The CHINS proceedings were terminated after J.H. became the children's legal guardian.

drugs. Mother provided negative drug screens and visited the children twice in December of 2007, once in February of 2008, and once in March of 2008.

Mother did not visit the children again until October 25, 2008. According to the children's maternal grandmother, Mother did not visit the children from April 2008 through October 2008 because Mother was doing drugs and drinking. Mother was scheduled to visit the children on November 22, 2008, but did not arrive. After missing the November 22, 2008 visit, D.H. told Mother, "Don't ever call us again, don't ever try to call again, don't ever try to see the kids again until I hear from your attorney." Tr. p. 133. D.H. seemingly made this statement in the hopes that the statement would cause Mother to "put her feet to the fire" and "get on the bandwagon." Tr. p. 134.

Mother did not inquire about or attempt to contact or visit with the children after November 22, 2008. Despite being employed, Mother has not paid any support for the children since November of 2007. J.H. and D.H. have not moved and have had the same contact information throughout the guardianship and adoption proceedings. Maternal grandmother testified that she did not believe that Mother should be granted custody of the children for fear that she would relapse or that Mother or her current husband would physically abuse the children.

Mother has a history of engaging in abusive relationships. Her current husband has a prior conviction for hitting Mother in the face. Mother and her husband, both of whom have struggled with drug and alcohol abuse, also have a history of drinking together. The children have only met Mother's husband on one occasion. Mother and her husband were evicted

4

from the home they lived in prior to their current home for failure to make payments on the home loan. In addition, Mother has been diagnosed with epilepsy and an anxiety disorder but is not currently treating either condition.

On April 18, 2011, Mother filed petitions seeking to terminate J.H.'s guardianship of the children. In her petitions, Mother claimed that the need for the guardianship had "been abated" because she had complied with all of J.H.'s requests and "it would be appropriate and in the [children's] best interest[s] to be returned to [Mother's] custody." Appellant's App. pp. 25-28. Shortly thereafter, on May 27, 2011, J.H. and D.H. filed petitions seeking to adopt the children. In their petitions, J.H. and D.H. alleged that the adoption would be in the children's best interests and that Mother's consent was not necessary pursuant to Indiana Code section 31-19-9-8(a)(2) because Mother had failed to engage in significant communication with and provide support for the children.

The trial court conducted a two-day trial during which it heard evidence relating to both Mother's petitions to terminate the guardianships and J.H. and D.H.'s petitions to adopt the children. The trial court allowed the Guardian Ad Litem ("GAL"), LaShay W. Newton, to submit her report and testify on the second day of trial over Mother's objection. The GAL testified that the children are happy and well-adjusted to living with J.H. and D.H. and expressed concern about Mother's history of abusive relationships and the emotional harm that would be suffered by the children if they were removed from J.H. and D.H.'s care. In addition, the GAL questioned why it took Mother approximately two and a half or three years

5

to hire an attorney to assist her in dealing with visitation and guardianship issues if the children were truly her top priority.

Following trial, the trial court denied Mother's petitions to terminate J.H.'s guardianship of the children and award her custody of the children. The trial court determined that Mother's consent to the adoption was not necessary because J.H. and D.H. had proved that the conditions set forth in Indiana Code section 31-19-9-8(a)(2) dispensing with the consent requirement had been met, and granted J.H. and D.H.'s petitions to adopt the children. This appeal follows.

## DISCUSSION AND DECISION

Mother raises four challenges to the trial court's order granting J.H. and D.H.'s petitions to adopt the children. Specifically, Mother contends that the trial court erred by allowing the guardianship and adoption proceedings to be tried together, allowing the GAL to submit her report and testify on the second day of trial, failing to terminate the guardianship and award Mother custody of the children, and granting the adoption of the children by J.H. and D.H.

### I. Whether the Trial Court Erred in Allowing the Guardianship and Adoption Proceedings to be Tried Together

Mother contends that the trial court erred in allowing the guardianship and adoption proceedings to be tried together. With respect to this claim, Mother's appellate brief does not contain a cognizable argument but rather, what can be considered, at most, a summary of her argument as to why the trial court should have conducted separate guardianship and adoption proceedings. The summary of Mother's argument is presented in the section of the brief

6

dedicated to the facts of the instant matter and is not supported by cogent reasoning or citation to any supporting authority.[3] It includes a transcription of a pre-trial discussion between the trial court and counsel about whether the guardianship and adoption proceedings should be tried together followed by a conclusory statement that "[t]he Trial Court abused its discretion in combining the two matters into one trial and by summarily refusing the Appellant's Motion for an Interlocutory Appeal." Appellant's Br. p. 4. Because Mother has failed to develop a cognizable argument or cite to any relevant supporting authority, Mother has waived this claim on appeal. *See* Ind. Appellate Rule 46(A)(8)(a); *Hartley v. Hartley*, 862 N.E.2d 274, 284 (Ind. Ct. App. 2007) (providing that a party generally waives any issue for which it fails to develop a cognizable argument or support with adequate citation to authority and portions of the record); *Cammack v. State*, 254 Ind. 637, 638-39, 261 N.E.2d 862, 863 (1970) (providing that "without an argument section in appellant's brief, there is in reality no appeal," and that the requirement that appellant present a cogent argument is not met by inclusion of a summary of the argument that does not include citation to relevant supporting authorities).

## II. Whether the Trial Court Erred in Allowing the GAL to Submit her Report and Testify on the Second Day of Trial

In addition, Mother contends that the trial court erred in allowing the GAL to submit her report and testify on the second day of trial. Similar to the contention discussed in

---

[3] We note that Mother's appellate brief lacks a statement of the facts that complies with the appellate rules. *See* Ind. App. R. 46(A)(6)(b) & (c) (providing that the statement of facts shall describe the facts relevant to the issues presented for appeal, shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed, and shall be in narrative form and shall not be a witness by witness summary of the testimony).

Section I of this decision, with respect to this contention, Mother's appellate brief contains what can be considered, at most, a summary of her argument as to why the GAL should not have been permitted to submit her report or testify. The summary of Mother's argument is again presented in the section of the brief dedicated to the facts of the instant matter and is not supported by cogent reasoning or citation to any supporting authority. Similar to the summary of the argument described in Section I of this decision, the summary of this argument includes a transcription of a discussion between the trial court and counsel about whether the GAL should be permitted to submit her report and testify, followed by the conclusory statements that "[t]he above and foregoing clearly demonstrates that the Trial Court abused its discretion by allowing the G.A.L. report into evidence and allowing the G.A.L. to testify. The G.A.L. report was prejudicial against the appellant herein and was not filed timely." Appellant's Br. p. 8. Again, because Mother has failed to develop a cognizable argument or cite to any relevant supporting authority, Mother has waived this claim on appeal. *See* Ind. Appellate Rule 46(A)(8)(a); *Hartley*, 862 N.E.2d at 284; *Cammack*, 254 Ind. at 638-39, 261 N.E.2d at 863.

### III. Whether the Trial Court Erred in Failing to Terminate the Guardianship and Award Custody of the Children to Mother

Mother next contends that the trial court erred in failing to terminate J.H.'s guardianship of the children. Specifically, Mother argues that the guardianship should have been terminated because she had met the terms of an alleged agreement between the parties regarding the conditions which Mother must meet in order to terminate the guardianship. In support of this contention, Mother points to a statement attributed to J.H. and D.H. by Case

8

Manager Brown wherein J.H. and D.H. stated that they believed that Mother would need to attend and complete long term substance abuse treatment, obtain and maintain employment to support the children, and obtain and maintain a stable home environment for one year before regaining custody of the children.[4] Mother claims that this statement is evidence of an agreement between the parties that if Mother completed the above-stated steps, the guardianship would be terminated. However, nothing in the record indicates that the statement reflected any agreement between the parties. Instead, the record indicates that the statement reflects the minimum goals that J.H. and D.H. believed Mother would need to meet before they would consider voluntarily relinquishing J.H.'s guardianship over the children. Mother points to no other evidence suggesting that any such agreement existed between the parties. As such, we cannot say that the trial court erred in rejecting Mother's attempt to construe the statement attributed to J.H. and D.H. by Case Manager Brown as an alleged agreement by the parties when denying Mother's request to terminate the guardianship.

Furthermore, even if the statement that was attributed to J.H. and D.H. by Case Manager Brown could possibly be construed as an agreement between the parties, Mother does not dispute the trial court's findings regarding her history of substance abuse, her prior neglect of the children, a substantiated incident of domestic abuse by Mother's current husband against Mother, and Mother's employment history, which included periods of voluntary unemployment. Mother instead claims that the record contained evidence which showed that she completed substance abuse treatment, obtained stable employment, and

_____

[4] This statement was attributed to J.H. and D.H. in the report that appears to have been submitted to the trial court by Case Manager Brown during the original guardianship proceedings in 2007.

9

maintained a stable home environment with her husband for a year. Mother's claim, however, amounts to an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). The record contains sufficient evidence to support the trial court's determination that Mother did not satisfy the requirements of the alleged agreement by the parties concerning the termination of J.H.'s guardianship of the children.

## IV.  Whether the Trial Court Erred in Granting J.H. and D.H.'s Petition to Adopt the Children

Mother also contends that the evidence was insufficient to show that her consent to the adoption of the children was not required. Specifically, Mother asserts that J.H. and D.H. failed to present clear and convincing evidence that she failed to communicate significantly with the children or knowingly failed to provide care and support for the children.

> When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion, and the trial court reached the opposite conclusion. *Rust v. Lawson*, 714 N.E.2d 769, 771 (Ind. Ct. App. 1999), *trans. denied*. We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Id.*

*In re Adoption of C.E.N.*, 847 N.E.2d 267, 271 (Ind. Ct. App. 2006).

"Indiana Code Section 31-19-11-1 provides that the trial court 'shall grant the petition for adoption and enter an adoption decree' if the court hears evidence and finds, in part, that 'the adoption requested is in the best interest of the child' and 'proper consent, if consent is necessary, to the adoption has been given.'" *In re Adoption of T.W.*, 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006). However, pursuant to Indiana Code section 31-19-9-8, a parent's

10

consent to adopt a child is not required if the potential adoptive parent can demonstrate that certain conditions exist. *In re Adoption of J.P.*, 713 N.E.2d 873, 875 (Ind. Ct. App. 1999). Indiana Code section 31-19-9-8 provides, in relevant part, that:

> (a) Consent to adoption is not required from any of the following:
> * * *
>> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>> * * *
> (b) If a parent has made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent.

A petitioner seeking to adopt without parental consent bears the burden of proving the statutory criteria for dispensing with such consent in Indiana Code section 31-19-9-8(a)(2) by "clear, cogent and indubitable evidence." *In re Adoption of C.E.N.*, 847 N.E.2d at 271. If the evidence most favorable to the judgment clearly, cogently, and indubitably establishes one of the criteria for granting adoption without parental consent, we will affirm the judgment. *Id.* Finally, the decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id.*

In the instant matter, the trial court concluded that J.H. and D.H. had proven that Mother's consent was not necessary because she had failed to engage in significant communication with the children and had failed to provide support for the children. We note, however, that because Indiana Code section 31-19-9-8(a)(2) is written in the disjunctive, we will affirm the judgment of the trial court if the evidence is sufficient to prove either that

11

Mother failed to significantly communicate with or provide support for the children. *See In re Adoption of T.W.*, 859 N.E.2d at 1218 (providing that because the provisions of Indiana Code section 31-19-9-8 are written in the disjunctive, either provides independent grounds for dispensing with parental consent).

Upon review, the record demonstrates that Mother has failed to provide for the care and support of the child during periods when she able to do so. The evidence shows that Mother has paid only $100 in support of the children since they were removed from her care in May of 2007. Mother does not dispute that she has paid only $100 in support of her children since 2007 or claim that she was unable to provide financial resources for the care and support of the children during the intervening years. Rather, Mother argues that the requirement that she consent to the adoption of the children by J.H. and D.H. should not be excused because she was under no court ordered obligation to provide financial support for the children. However, in Indiana, "[i]t is well-settled that parents have a common law duty to support their children." *Boone v. Boone*, 924 N.E.2d 649, 652 (Ind. Ct. App. 2010).

The record demonstrates that Mother has been employed in various capacities since the children were removed from her care in May of 2007, including working at a hospital, a nursing home, and Wal-Mart, and that she earned between $7.00 and $9.45 an hour at each of these jobs. The record also demonstrates that Mother has had short periods of voluntary unemployment, during which times she was capable of working but chose not to. Despite these short periods of voluntary unemployment, nothing in the record indicates that Mother was unable to provide support for the children. Mother had no significant debt and little to

no living expenses. Instead of using her earnings to support her children, Mother used her earnings to buy alcohol and recently to complete certain improvements on her current home. Because we conclude that the $100 paid in support of the children since their removal from Mother's care in 2007 amounts to nothing more than a token attempt to support the children, we conclude that J.H. and D.H. met their burden of proving that Mother had abandoned the children, and, as a result, Mother's consent to the adoption was not necessary. *See* Ind. Code § 31-19-9-8.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.